566 P.2d 846

**Emmett A. ALEXANDER, Plaintiff-Appellee,**

v.

**Richard COOK, d/b/a Espanola Transit-Mix Company, Defendant-Appellant.**

**No. 2931.**

Court of Appeals of New Mexico.

June 28, 1977.

M. J. Rodriguez, Jones, Gallegos, Snead & Wertheim, P. A., Santa Fe, for defendant-appellant.

J. Ronald Boyd, Sanchez & Boyd, Santa Fe, for plaintiff-appellee.

## OPINION

WOOD, Chief Judge.

Plaintiff and defendant, according to the briefs, are non-Indians engaged in business activity on Pueblo land. Plaintiff seeks damages from defendant for interference with plaintiff's business activity. The issues in this interlocutory appeal are: (1) subject matter jurisdiction, and (2) whether the United States is an indispensable party.

The complaint alleges that plaintiff has a permit to remove sand and gravel from specified acreage belonging to the Pueblo of San Ildefonso. This is Indian land. *Sangre de Cristo Dev. Corp., Inc. v. City of Santa Fe*, 84 N.M. 343, 503 P.2d 323 (1972), cert. denied, 411 U.S. 938, 93 S.Ct. 1900, 36 L.Ed.2d 400 (1973). The permit is included in the appellate record; it is an exclusive use permit to remove sand and gravel from specified acreage. The permit was executed by the Governor of the Pueblo and approved by the Superintendent of the United Pueblos Agency.

The complaint alleges that defendant came onto the acreage specified in plaintiff's permit and removed sand and gravel from that acreage. The complaint also alleges that defendant's plant, adjacent to plaintiff's acreage, has flooded a portion of plaintiff's acreage with waste and that defendant has blocked ingress and egress in connection with plaintiff's acreage. Plaintiff seeks compensatory and punitive damages from defendant.

Defendant moved to dismiss the complaint. The motion asserts a lack of subject matter jurisdiction in New Mexico courts and that the United States is an indispensable party which has not been joined. The trial court denied the motion to dismiss. We granted defendant's application for an interlocutory appeal.

*Subject Matter Jurisdiction*

We start with the proposition that the Indian land is a part of New Mexico and that New Mexico law, both civil and criminal, is in force on the Indian land unless rendered inapplicable by higher authority. See *Surplus Trading Co. v. Cook*, 281 U.S. 647, 50 S.Ct. 455, 74 L.Ed. 1091 (1930). Paraphrasing *McClanahan v. Arizona State Tax Commission*, 411 U.S. 164, 93 S.Ct. 1257, 36 L.Ed.2d 129 (1973), this appeal involves a reconciliation of the plenary power of New Mexico over residents within its borders with the fact that the activities involved in this lawsuit occurred on Indian land. What is involved is the "exertions of state sovereignty over non-Indians who un-

dertake activity on Indian reservations." *McClanahan, supra.*

■ Absent a specific prohibition, a state court has subject matter jurisdiction over crimes committed on an Indian reservation by non-Indians against non-Indians. *Williams v. Lee,* 358 U.S. 217, 79 S.Ct. 269, 3 L.Ed.2d 251 (1959); *New York ex rel. Ray v. Martin,* 326 U.S. 496, 66 S.Ct. 307, 90 L.Ed. 261 (1946); *Draper v. United States,* 164 U.S. 240, 17 S.Ct. 107, 41 L.Ed. 419 (1896); see *State v. Warner,* 71 N.M. 418, 379 P.2d 66 (1963). Unless prohibited by higher authority, a state may tax the property of non-Indians which is located on Indian land. *Thomas v. Gay,* 169 U.S. 264, 18 S.Ct. 340, 42 L.Ed. 740 (1898); *Utah & Northern R. Co. v. Fisher,* 116 U.S. 28, 6 S.Ct. 246, 29 L.Ed. 542 (1885). See *Prince v. Board of Ed. of Cent. Con. Ind. Sch. D. No. 22,* 88 N.M. 548, 543 P.2d 1176 (1975).

Starting with the proposition that New Mexico has plenary power to adjudicate a dispute between non-Indians, the question is whether that power has been so restricted that the New Mexico District Court is without authority to act. Defendant contends the authority to act has been restricted in three ways: (a) preemption, (b) infringement on the rights of reservation Indians, (c) a New Mexico decision.

### (a) Preemption

■ Defendant points out that various federal statutes and court decisions are to the effect that state courts have no authority to adjudicate the ownership of Indian land, the right to possession of Indian land or any interest in Indian land. He points out that the preemption doctrine has been held to apply to the leasing of Indian land. *Sangre de Cristo Dev. Corp., Inc. v. City of Santa Fe, supra.* We need not review the authority cited by defendant. Rather, we accept the proposition that New Mexico courts lack authority to adjudicate interests in Indian land. See *Chino v. Chino,* 90 N.M. 476, 561 P.2d 476 (1977).

■ Defendant also points out that plaintiff has some sort of interest in Indian land.

We also accept that proposition. In doing so, we make no effort to define the nature of that interest. The briefs refer to a "lease"; however, the instrument from which plaintiff's interest arises is an exclusive use "permit". Neither party has briefed the nature of this "permit" interest. Compare: Lease—*State v. District Court of Ninth Judicial Dist., Curry County,* 44 N.M. 16, 96 P.2d 710 (1939), 126 A.L.R. 651 (1940); permit—*State v. Mauney,* 76 N.M. 36, 411 P.2d 1009 (1966); license—*New Mexico Sheriffs & Police Ass'n v. Bureau of Rev.,* 85 N.M. 565, 514 P.2d 616 (1973). Whatever the nature of plaintiff's "permit" interest, damage to that interest is protected by the courts. See *Harris v. Keehn,* 25 N.M. 447, 184 P. 527 (1919), 7 A.L.R. 1099 (1920).

Is plaintiff's interest in Indian land being adjudicated in this lawsuit? No.

The appellate record consists of a complaint, a letter exhibit attached to the complaint, plaintiff's permit, and defendant's motion to dismiss. These documents do not show a dispute between plaintiff and any Indian or Indian agency. They do show a dispute between non-Indians. Defendant's brief affirms that plaintiff holds a permit approved by the Bureau of Indian Affairs, United States Department of the Interior.

In an effort to demonstrate that an interest in Indian land would be adjudicated, defendant relies on a sentence in the letter exhibit to characterize this lawsuit as a boundary dispute. To arrive at this characterization, defendant takes the sentence out of context.

The letter is from the Superintendent to defendant. It states that it is "very apparent" that defendant's operations "are being conducted in the area permitted to E.A. Alexander." It states that defendant's south boundary cannot be changed because of plaintiff's permit. It suggests that defendant's south boundary be delineated to prevent future encroachment by defendant outside defendant's permitted area. It closes with the offer to resurvey the boundary if such is needed. This letter does not show a boundary dispute; rather, it supports a "very apparent" encroachment by defend-

ant on plaintiff's acreage and an offer to help defendant stop this encroachment by resurveying, if a resurvey is needed.

■ There is nothing before us showing that plaintiff's damage claims involve the adjudication of an interest in Indian land. Accordingly, there is no factual basis for holding state court jurisdiction has been preempted on the basis that an interest in Indian land would be adjudicated.

(b) Infringement

■ The infringement test, stated in *Williams v. Lee, supra,* is whether state action infringed on the right of reservation Indians to make their own laws and be ruled by them. Concerning this test, *McClanahan v. Arizona State Tax Commission, supra,* states:

> "It must be remembered that cases applying the *Williams* test have dealt principally with situations involving non-Indians. * * * In these situations, both the tribe and the State could fairly claim an interest in asserting their respective jurisdictions. The *Williams* test was designed to resolve this conflict by providing that the State could protect its interest up to the point where tribal self-government would be affected."

How would the exercise of New Mexico jurisdiction in this case affect Indian interests in self-government? See *United States v. Antelope,* 430 U.S. 641, 97 S.Ct. 1395, 51 L.Ed.2d 701 (1977).

One Indian interest, according to defendant, is the resolution of disputes that arise within the reservation. The dispute, however, is between non-Indians. The resolution of that dispute by a New Mexico court does not infringe on Indian government any more than state court jurisdiction over crimes between non-Indians that arise on Indian land. State court jurisdiction over such crimes has been approved. *Williams v. Lee, supra.* As to a suit for damages, see *Paiz v. Hughes,* 76 N.M. 562, 417 P.2d 51 (1966).

Another Indian interest, according to defendant, is the interest of the Pueblo government in protecting Indian land. Defendant asserts that a lawsuit involving Indian land necessarily involves the affairs of the Pueblo. He relies on *United States v. Blackfeet Tribal Court,* 244 F.Supp. 474 (D.C.Mont.1965) and *Hot Oil Service, Inc. v. Hall,* 366 F.2d 295 (9th Cir. 1966). Both decisions involved non-Indian plaintiffs who asserted interests in Indian leases. Both decisions state that the leasehold interests necessarily involved the internal affairs of the Indian tribe. The distinguishing factor, however, is that both decisions involved an attempt to enforce an interest in Indian land against an Indian defendant. Our case involves a claim for damages from a non-Indian defendant.

■ *Moe v. Confederated Salish & Kootenai Tribes,* 425 U.S. 463, 96 S.Ct. 1634, 48 L.Ed.2d 96 (1976) involved an Indian vendor of cigarettes on Indian land. *Moe* approved the requirement that the Indian seller collect Montana's cigarette tax validly imposed on non-Indians. "We see nothing in this burden which frustrates tribal self-government * * *." Similarly, we do not see how New Mexico's resolution of a damage suit involving non-Indians would interfere with tribal self-government even though the damage claims arise out of business activities on Indian land.

(c) A New Mexico Decision

The New Mexico decision involves both of the concepts previously discussed—preemption and infringement. Implicit in defendant's brief is the contention that regardless of whether federal decisions require a holding of no subject matter jurisdiction, the decision in *Chino v. Chino, supra,* reaches that result. If that is true, we must apply it. *Alexander v. Delgado,* 84 N.M. 717, 507 P.2d 778 (1973).

*Chino* involved a suit between Indians for possession of a home located within an Indian reservation. In holding that New Mexico courts lacked subject matter jurisdiction, the New Mexico Supreme Court stated that the applicable treaties and statutes precluded "the state from exercising jurisdiction over property lying within the reservation boundaries." It also held:

"When the land lies within a reservation, enforcement of the owner's rights to such property by the state court would infringe upon the governmental powers of the tribe, whether those owners are Indians or non-Indians. Civil jurisdiction of lands within the reservation remains with the tribe."

On the facts, *Chino* is distinguishable. Defendant disregards the facts of *Chino* and relies on the above quotations.

■ We doubt that the New Mexico Supreme Court intended the first quotation to apply to suits between non-Indians without regard to the property involved. Our doubts are based on the following: (1) The disclaimer over right and title to Indian land found in N.M.Const., Art. XXI, § 2, and in the Enabling Act for New Mexico, § 2, paragraph Second, is a disclaimer of proprietary interest, but is not a disclaimer of governmental interest. *Sangre de Cristo Dev. Corp., Inc. v. City of Santa Fe, supra; Montoya v. Bolack,* 70 N.M. 196, 372 P.2d 387 (1962). (2) Powers not reserved to Indians for their exclusive jurisdiction includes "taxation of property belonging to non-Indians on the reservation, *Utah & Northern Railway v. Fisher,* 116 U.S. 28, 6 S.Ct. 246, 29 L.Ed. 542 (1885)." *State Securities, Inc. v. Anderson,* 84 N.M. 629, 506 P.2d 786 (1973). (3) The holding in *Prince v. Board of Ed. of Cent. Con. Ind. Sch. D. No. 22, supra,* is that non-Indian property located within a reservation can be taxed by New Mexico. These decisions indicate that non-Indian property located within an Indian reservation is subject to the jurisdiction of New Mexico courts.

■ The second quotation states that state courts have no jurisdiction to enforce a non-Indian owner's rights in land located within a reservation because such would be an infringement upon the governmental powers of the tribe. This statement must be considered in light of the *Chino* three-point analysis of the infringement test. The three points are: 1. Whether the parties are non-Indian, 2. whether the cause of action arose on the reservation, and 3.

the nature of the interest to be protected. Here the parties are non-Indians, the cause of action did arise on the reservation, see, however, *Paiz v. Hughes, supra,* and the interest to be protected is a non-Indian interest. In these circumstances we doubt that our Supreme Court intended the second quotation to apply to the facts of this case.

Because the parties are non-Indians and because the interest to be protected is non-Indian, we hold that the *Chino* quotations are not controlling. However, there is another distinction. This case does not deal directly with the occupancy and ownership of land, as did *Chino.* This case involves interference with plaintiff's right to remove sand and gravel. Enforcement of that right, as between non-Indians, is not barred by *Chino.*

The trial court did not err in refusing to dismiss for lack of subject matter jurisdiction.

*Indispensable Party*

■ Defendant contends the United States is an indispensable party because it holds title to the land in trust for the Pueblo. Because the United States is a trustee, defendant asserts that "it follows that the United States is an indispensable party in an action involving boundary lines within that land." We assume that the United States is a trustee; we have held that the record before us does not show that the suit involves a boundary dispute.

Defendant also asserts this suit is a proceeding against property in which the United States has an interest. This is incorrect. Plaintiff is seeking to be compensated for the damage to his property interest: no claim has been made that directly involves the interest of the United States.

Defendant asserts that the interests of the United States "may be affected" and therefore it is an indispensable party. He

fails to demonstrate how the interest of the United States will be necessarily affected. Complete and final justice can be affected between the parties without affecting the rights of the United States. *American General Companies v. Jaramillo*, 88 N.M. 182, 538 P.2d 1204 (Ct.App.1975). The United States is not an indispensable party to this litigation. The trial court did not err in refusing to dismiss on that basis.

Oral argument is unnecessary. The order denying the motion to dismiss is affirmed.

IT IS SO ORDERED.

HENDLEY and LOPEZ, JJ., concur.